**E-Filed 4/26/2010**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| THE STANDARD FIRE INSURANCE COMPANY,<br><br>                    Plaintiff,<br><br>          v.<br><br>PERRY OLSEN,<br><br>                    Defendant. | Case Number CV 10-00056 JF (PVT)<br><br>**ORDER[1] GRANTING DEFENDANT'S MOTION TO STAY**<br><br>Re: Docket No. 8 |

Defendant Perry Olsen ("Olsen") moves to dismiss the complaint of Plaintiff The Standard Fire Insurance Company ("Standard") pursuant to Fed. R. Civ. P. 12(b)(1) and *Brillhart v. Excess Insurance Company of America*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), or in the alternative to stay the instant action in deference to an action currently pending in the Santa Cruz Superior Court. The motion is opposed. The Court has considered the moving and responding papers and the oral arguments of counsel presented at the hearing on April 23, 2010. For the reasons set forth below, the instant action will be stayed pending resolution of the state

---

[1] This disposition is not designated for publication in the official reports.

court litigation.

## I. BACKGROUND

A. **Factual background**

Standard is incorporated in Connecticut and does business in several states, including California. Federal Complaint ¶ 3. Olsen is a resident of California and the owner of a forty-six foot Hunter sailboat named BOBBY MCGEE ("Boat"). *Id.* ¶¶ 4-5, Ebey Decl. ¶ 4. On February 3, 2006, Standard issued an insurance policy to Olsen covering the Boat. The policy was renewed on February 3, 2008. Federal Complaint ¶ 6, Ex. A (policy renewal); Ebey Decl., Ex. 1 ("State Complaint"), Ex. A (initial policy) (indicating that the policy commenced on February 3, 2006).

On February 9, 2008, the Boat was damaged in waters at or near Pebble Beach, California. Federal Complaint ¶ 5. Olsen had the Boat repaired at Santa Cruz Yachts. *Id.* ¶ 7. Standard determined that the grounding of the Boat was covered by the policy and indemnified Olsen for what it claims was the full cost of repair by Santa Cruz Yachts – approximately $169,000. *Id.* The parties dispute whether Standard or Olsen controlled the repair process. Standard alleges that Olsen controlled the process and that "Standard paid amounts due for repairs to Olsen, who in turn paid Santa Cruz Yachts without confirmation that the work was done satisfactorily or even completed." *Id*. Olsen claims that Standard controlled the repair process. State Complaint ¶ 15 (alleging that (1) Standard instructed Olsen to sign a contract with the salvage company; (2) Standard's claims representative stated that the Boat was not a total loss and should be repaired; (3) Olsen advised Standard that he was not qualified to determine the scope, cost or quality of the repairs and requested authorization from Standard to retain a surveyor to oversee timely completion of adequate repairs; and (4) Standard refused Olsen's request and insisted that its claims representative would serve in the role of a surveyor and oversee the repairs).

Olsen claims that the repairs made by Santa Cruz Yachts were negligent and/or incomplete. These allegations form the basis of Olsen's state-court complaint for negligence against Standard, Santa Cruz Yachts and three other separately named defendants. State

Complaint ¶¶ 26-29. Within that complaint, Olsen alleges that Standard assumed a duty to inspect and supervise the repairs to ensure that they were completed in accordance with the standard of care in the industry. *Id.* ¶¶ 27-29. Standard disputes that the policy covers the cost of completing or correcting repairs it has paid for previously. Federal Complaint ¶ 8; State Complaint ¶¶ 17, 35-36 (alleging that Standard breached its written contract with Olsen, as well as the implied covenant of good faith and fair dealing by failing to reimburse him for the cost of completing and correcting Santa Cruz Yachts' inadequate repair work). Santa Cruz Yachts went out of business prior to completing repair of the Boat in a satisfactory manner. Federal Complaint ¶ 7.

Olsen retained Keefe, Kaplan Maritime, Inc. ("KKMI") to work on the Boat. Olsen alleges that he has spent more than $234,000 to correct and complete the repair work done by Santa Cruz Yachts. Federal Complaint ¶ 9. Standard alleges that it reviewed the work done by KKMI and determined that only $56,016.52 of its work was "attributable to work not finished by Santa Cruz Yachts and paid without prejudice an additional $56,016.52 to Olsen." *Id.* Standard claims that it contested coverage under the policy as to the additional costs claimed for Santa Cruz Yachts' improper repairs, but paid it without waiver in an attempt to resolve the disputed claim. Finally, Standard asserts that Olsen has refused to comply with policy terms requiring an appraisal, insisting instead that Standard provide a "lump sum payment far in excess of amounts that could be owed, interspersed with statements of 'outrage' and 'bad faith.'" Declaration of G. Geoffrey Robb ("Robb Decl.") ¶¶ 2, 4, 5, 9, 12, 17 (stating that Olsen demands that Standard pay him for the following without attempting to allocate the amounts or agreeing to an appraisal as demanded by the terms of the policy: (1) covered grounding for which Standard has paid about $230,000 to date, (2) costs to re-do repairs done by Santa Cruz Yachts before it went out of business at about $150,000; and (3) costs of repairs done by Olsen unrelated to either the grounding or repair issues at about $76,000).

**B. Procedural background**

Prior to the filing of either the federal or the state court action, the parties communicated regarding the underlying dispute. Standard claims that Olsen first threatened to file suit in July

3

2009 and repeated the same threat of litigation for the following six months. Robb Decl. ¶¶ 4-12. Standard also claims that "Olsen refused to engage in any good faith negotiations and failed to respond to correspondence from Standard regarding the allocation related to the various vessel repairs." Opp. Mot. at 3, citing Robb Decl. ¶¶ 9-12.

Olsen claims that in a telephone conversation on January 4, 2010, his counsel indicated to Standard that he intended to file a complaint against Standard for bad faith and other claims for relief. Motion to Dismiss at 2, citing Ebey Decl. ¶ 14. On January 7, Standard's attorney wrote a letter acknowledging that he had been advised of Olsen's intent to file suit, not mentioning that he had filed the instant federal case seeking declaratory relief the previous day. *Id.*; Robb Decl., Ex. E (January 7 Letter).

On January 6, 2010, Standard filed the instant federal action seeking declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, as well as costs of suit and an order directing Olsen to participate in the appraisal process or refund the additional amounts paid by Standard, depending on the Court's finding of liability. On January 21, 2010, Olsen filed his state-court complaint against Standard and four other separately named defendants, alleging: (1) bad faith against Standard; (2) fraud against all defendants; (3) negligence against all defendants; and (4) breach of written contract against all defendants. Ebey Decl. ¶ 5, Ex. 1 ¶¶ 12-37. Standard did not serve the complaint in the instant federal action until after Olsen filed and served Standard in the state-court action. Declaration of Frederick Ebey ("Ebey Decl.") ¶¶ 17-20 (claiming that the state complaint was filed on January 21, that Olsen's counsel first received a letter with copies of the instant federal action enclosed on January 22, and that Olsen was served personally on January 25). On April 6, 2010, the Santa Cruz Superior Court denied Standard's motion to dismiss Olsen's complaint in deference to the instant federal action.

## II. LEGAL STANDARD

Jurisdiction under 28 U.S.C. § 2201(a) is discretionary, and the district courts should avoid duplicative litigation. *Government Employees Ins. Co. v. Dizol,* 133 F.3d 1220, 1225 (9th Cir. 1998). Before exercising jurisdiction, the district court must first determine if there is an actual case or controversy. *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir.

4

2005), citing *American States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994). "Second, if the court finds that an actual case or controversy exists, the court must decide whether to exercise its jurisdiction by analyzing the factors set out in *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), and its progeny." *Id.*, citing *Kearns,* 15 F.3d at 143-44.

The primary *Brillhart* factors have been articulated as follows: "A district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation." *Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 803 (9th Cir. 2002), citing *Dizol,* 133 F.3d at 1225. Secondary considerations may include:

> [W]hether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies.

*Dizol*, 133 F.3d at 1225 n.5 (citation omitted).

### III. DISCUSSION

**A. Whether *Brillhart* applies**

Olsen contends that Standard's Federal Complaint alleges only a claim for relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2001 and that this Court's jurisdiction over the action thus is discretionary. Standard argues that the Federal Complaint cannot be dismissed or stayed under *Brillhart* because it seeks affirmative monetary relief (reimbursement of monies found to have been overpaid to Olsen and costs of suit) and specific performance (an order requiring Olsen to abide by the policy's mandated appraisal process) in addition to declaratory relief.

The Ninth Circuit applies "the principle that 'when other claims are joined with an action for declaratory relief (e.g., bad faith, breach of contract, breach of fiduciary duty, rescission, or claims for other monetary relief), the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief.'" *United Nat'l Ins. Co. v. R & D Latex Corp.,* 242 F.3d 1102, 1112 (9th Cir.2001), quoting *Dizol,* 133 F.3d at 1225. Despite the Ninth

Circuit's holding in *United Nat'l*, "the presence of claims for monetary relief does not require the district court to accept jurisdiction where the action is 'primarily declaratory in nature.'" *Keown v. Tudor Ins. Co.*, 621 F.Supp.2d 1025, 1029 (D. Haw. 2008), quoting *United Nat'l,* 242 F.3d at 1112. Rather, the court must analyze:

> whether the claim for monetary relief is independent in the sense that it could be litigated in federal court even if no declaratory claim had been filed. In other words, the district court should consider whether it has subject matter jurisdiction over the monetary claim alone, and if so, whether that claim must be joined with one for declaratory relief.

*United Nat'l*, 242 F.3d at 1113.

The first inquiry is whether the court has subject matter jurisdiction over the monetary and specific performance claims alone. Standard contends that this Court has admiralty[2] and diversity jurisdiction over these claims. Olsen does not contest that this Court has admiralty jurisdiction over the claims, arguing instead that removal of his state court action based solely on general maritime jurisdiction would defeat the choice of forum protected by the "savings to suitors" clause of 28 U.S.C. § 1441. Reply at 3, citing *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1069 (9th Cir. 2001). In this case, however, the instant action was not removed from state court, making *Morris* inapposite.

With respect to diversity jurisdiction, Olsen insists that while there is diversity between himself and Standard, the pending state-court case could not be removed under 28 U.S.C. § 1441 because complete diversity among the parties is lacking. The state court complaint alleges claims not only against Standard but also against four other parties, all of which are residents of California. State Complaint ¶¶ 3-7. Once again, the Court must look to the instant action and its concerned parties. Complete diversity does exist as between Standard and Olsen. Accordingly,

---

[2] The *Brillhart* analysis and abstention doctrine has been applied in the context of admiralty cases. *Hawaii Stevedores, Inc. v. HT&T Co.*, 363 F.Supp.2d 1253, 1271 (D. Haw. 2005), citing *Phoenix Assurance PLC v. Marimed Foundation for Island Health Care*, 125 F.Supp.2d 1214 (D. Haw. 2000) (recognizing that "[n]either the Supreme Court nor the Ninth Circuit have determined the amount of discretion a district court possesses in deciding whether to exercise jurisdiction in a declaratory judgment action when the court is sitting in admiralty" and holding that analysis under *Dizol* is proper).

the Court determines that it has diversity jurisdiction over Standard's claims for monetary relief and specific performance.

However, the *United Nat'l* inquiry does not end with a determination of subject matter jurisdiction. The Court also must resolve whether the monetary relief and specific performance Standard seeks are independent of Standard's claim for declaratory relief. Standard seeks a judicial declaration that: (1) the expenses to complete and correct the improper repairs done by Santa Cruz Yachts are not covered by the policy in whole or in part; (2) that Standard satisfied its obligation under the policy for the claim arising out of the grounding and subsequent repairs to the Boat; and (3) that Olsen's claim for policy benefits is barred in whole or in part by Olsen's own breaches of the policy. Federal Complaint ¶ 22(a)-(c). Standard's requests for monetary relief and specific performance necessarily require a predicate finding as to the obligations of Standard and Olsen under the policy. *Id.* ¶¶ 22(d)(requesting "that if the Court determines that Standard has overpaid Olsen in relation to the claim, that Olsen be ordered to refund the amount of said over payment"); *id.* ¶ 22(e) ("in the alternative, if the Court finds that additional policy benefits are owed to Olsen, that the quantum of covered losses is to be determined by the aforesaid Appraisal process..."); *id.* ¶22(f) (requesting costs of suit). The resolution of Standard's requests for specific performance and monetary relief thus are "inextricably intertwined with, and depend[ent] upon a declaration of coverage." *N. Pac. Seafoods, Inc. v. Nat'l Union Fire Ins. Co.,* No. C06-795RSM, 2008 WL 53180, at *3 (W.D. Wash. 2008); *see also Keown*, 621 F.Supp.2d at 1030-31 (holding that the "the proposition that 'all claims for monetary relief prevent the federal court from declining jurisdiction over an insurance declaratory judgment action,' is incorrect as a matter of law.").

The Court concludes that although Standard seeks monetary relief and specific performance in addition to its claim for declaratory relief, the instant action nonetheless is "primarily declaratory in nature" and subject to the discretionary exercise of jurisdiction. *N. Pac. Seafoods, Inc,* 2008 WL 53180, at *3, quoting *United Nat'l*, 242 F.3d at 1113.

**B. *Brillhart* analysis**

"[A] district court is authorized, in the sound exercise of its discretion, to stay or to

dismiss an action seeking a declaratory judgment." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 288, 115 S.Ct. 2137, 2143, 132 L.Ed.2d 214 (1995).  In assessing a declaratory relief action, "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.* at 288.  "[W]here the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." *Id.* at 288 n. 2, citing P. Bator, D. Meltzer, P. Mishkin, & D. Shapiro, Hart and Wechsler's The Federal Courts and the Federal System 1451, n. 9 (3d ed. 1988).

### 1. Determination of state law issues

Standard's claim "requires the construction of a marine insurance contract. Disputes involving marine insurance contracts for vessels engaged in maritime commerce and navigation fall within admiralty jurisdiction." *Phoenix Assurance PLC v. Marimed Foundation for Island Health Care Training*, 125 F.Supp.2d 1214, 1219 (D. Haw. 2000), citing *Simon v. Intercontinental Transport B.V.,* 882 F.2d 1435, 1441 (9th Cir. 1989).  "Disputes arising under marine insurance contracts are governed by state law...unless an established federal rule addresses the issues raised, or there is a need for uniformity in admiralty practice." *Yu v. Albany Ins. Co.*, 281 F.3d 803, 806 (9th Cir. 2002), citing *Kiernan v. Zurich Cos.*, 150 F.3d 1120, 1121 (9th Cir.1998); *see also Certain Underwriters at Lloyds v. Inlet Fisheries Inc.*, 518 F.3d 645, 649 (9th Cir. 2008) ("Following *Wilburn Boat [v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955).], if extant federal admiralty law does not contain an applicable rule, courts are instructed to look to state law, rather than fashioning a new federal admiralty rule or adopting one from British law.  Thus, the Supreme Court acknowledged the leading role of states in governing insurance policies, including marine insurance policies."); *see id.* at 650 ("In the Ninth Circuit, we require that the rule be sufficiently longstanding and accepted within admiralty law that it can be said to be "established.").

Olsen argues that the relief sought by Standard's Federal Complaint – a declaration that the costs of completing or correcting repair work are not covered by the policy – presents no

novel issues of admiralty law. Olsen points out that the Ninth Circuit frequently has applied controlling state law to marine insurance contractual issues. *See e.g., Bohemia, Inc. v. Home Ins. Co.*, 725 F.2d 506, 511-12 (9th Cir. 1984) (sitting in admiralty jurisdiction and applying state law to an insurer's duty to exercise good faith in evaluating and settling a claim); *Suydam v. Reed Stenhouse of Washington, Inc.*, 820 F.2d 1506, 1510 (9th Cir. 1987) (holding that "[s]ince there is no federal admiralty law on the issue of agency in the marine insurance context, we turn to Washington law on the subject."); *Yu,* 281 F.3d at 811 (concluding that "[b]ecause there is no established federal rule governing the doctrine of equitable estoppel in marine insurance contracts" state law governs). Olsen contends that California law governs interpretation of the parties' insurance contract, and that the instant action thus is distinguishable from *Youell v. Exxon Corp.,* 74 F.3d 373, 376 (2d Cir.1996).

In *Youell*, the court determined that *Brillhart* abstention was unwarranted because the case raised novel issues of federal maritime law. *Id.* at 376 (holding that the novel issue of whether maritime loss was caused by the insured's recklessness or was fortuitous required the federal court to hear the case, despite parallel state court proceedings). Standard does not appear to dispute that no existing federal admiralty rule applies to the issues presented here – the respective obligations of a marine insurer and insured regarding repair of a boat – yet it contends that the issues are somehow novel. Despite its concession at oral argument that the present case is not "Exxon Valdez," Standard does not explain why or how the issue in dispute is so novel that state contract law should not apply. *Inlet Fisheries Inc.*, 518 F.3d at 649 ("if extant federal admiralty law does not contain an applicable rule, courts are instructed to look to state law, rather than fashioning a new federal admiralty rule or adopting one from British law"). Standard contends only that there is a "need for uniformity under maritime law" on an insurer's duty for negligent or incomplete repairs. Opp. Mot. at 6 (stating that while California regulates the obligations of the insurer and insured related to automobiles, *see, e.g.* Cal. Ins. Code. § 758.5, similar efforts have not been extended to boat repairs), citing Alex L. Parks, "The Law and Practice of Marine Insurance and Average" Vol. II, page 738 (Cornell Maritime Press, 1987) (asserting that "questions of reasonableness must be tested from the standpoint of both the

9

1 | underwriter and shipowner. If the assured acts imprudently, then any extra costs incurred are for
2 | the assured's account.") The Court concludes that in the absence of an applicable federal
3 | maritime rule or a novel issue of admiralty law, interpretation of the subject insurance policy
4 | necessarily will involve application of California law.

### 2. Forum shopping

"Forum shopping weighs in favor of a stay when the party opposing the stay seeks to avoid adverse rulings made by the state court or to gain a tactical advantage from the application of federal court rules." *See Travelers Indem. Co. v. Madonna,* 914 F.2d 1364, 1371 (9th Cir. 1990) (citation omitted). The parties present competing portrayals of their communications prior to filing their respective lawsuits. Olsen contends that Standard, upon learning that Olsen intended to file an action for bad faith, ran to the federal courthouse in an effort to file first. *See* Ebey Decl. ¶ 14 (stating that on January 4, two days before Standard filed the instant action, Olsen's counsel told Standard's counsel that he intended to file a complaint against Standard for bad faith and other claims for relief); *see also* Robb Decl., Ex. E (Jan 7 letter from Standard's counsel to Olsen's counsel acknowledging Olsen's intention to file suit, but omitting any mention that Standard filed the instant action the prior day). Olsen claims that Standard's failure to serve the Federal Complaint until after Olsen filed his State Complaint establishes that Standard sought a tactical advantage by filing an anticipatory action for declaratory relief, increasing Olsen's litigation expenses because Olsen will be forced to commute from Santa Cruz, where he resides, and to litigate the same issues in two courts.

Standard contends that its filing in this Court represents nothing more than a good faith effort to resolve a dispute over which Olsen had been threatening litigation for six months. "The purpose of the Declaratory Judgment Act is to relieve potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure-or never." *Hal Roach Studios, Inc. v. Richard Feiner and Co.*, *Inc.*, 896 F.2d 1542, 1555 (9th Cir. 1990) (citation and quotation marks omitted). The record does reflect prolonged communication between the parties over a six month period during which Standard appears to have made attempts at resolution short of litigation. Robb Decl., Exs. A-G (letters, primarily

from Standard to Olsen, attempting to resolve the issues central to the instant action). Standard claims that it is Olsen who has engaged in forum-shopping and gamesmanship by asserting claims in its State Complaint against four California defendants in order to defeat diversity jurisdiction.

The Court finds that there is insufficient evidence that either party acted in deliberate bad faith. Accordingly, it concludes that this factor does not favor a determination in favor of either party.

### 3. Duplicative litigation

On April 6, 2010, the Santa Cruz Superior Court denied Standard's motion to dismiss Olsen's complaint in deference to the instant federal action. Under California law, in addition to answering Olsen's four claims for relief that are aligned with the declaratory relief sought in this action, Standard will be required to include any claims for monetary relief and specific performance under the policy in a compulsory cross-complaint, as such claims are "related to the subject matter of the complaint." *See* Cal. Code. Civ. Proc. § 426.30.

Standard argues that the litigation need not be duplicative because this Court could retain jurisdiction over the "relatively narrow, specific and distinct marine insurance issues raised in Standard's complaint." Opp. Mot. at 9 (stating that Standard would ask the Court to "first order the parties to participate in the Appraisal process as required by the policy, and upon Standard's satisfaction of its policy obligations following Appraisal, issue an order declaring that Standard has fully complied with the policy terms and conditions; and then, if required, order Olsen to reimburse any overpayment by Standard."). However, because Standard is required to allege the claims pled in the instant action as counter-claims to Olsen's State Complaint, duplicative litigation cannot be avoided. Accordingly, the Court concludes that this factor favors abstention.[3]

---

[3] "If there are parallel state court proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court." *Dizol*, 133 F.3d at 1225. "However, there is no presumption in favor of abstention in declaratory actions generally, nor in insurance coverage cases specifically." *Id.* Olsen contends that the parallel state court action gives rise to a presumption that the instant action should proceed in state court. Standard argues that *Dizol's* presumption

11

In light of the above considerations, the Court finds that judicial efficiency and fairness would not be served by allowing this case to proceed in parallel with the litigation in the Santa Cruz Superior Court. *See Wilton,* 515 U.S. at 288; *Principal Life Ins. Co.,* 394 F.3d at 672 (holding that the court should balance the relative concerns of "judicial administration, comity, and fairness to the litigants."). At the same time, "where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." *Wilton*, 515 U.S. at 288 n.2. Because the parallel state proceeding provides the strongest basis for abstention, the instant action will not be dismissed but instead will be stayed pending resolution of the state court litigation.

### IV. ORDER

Good cause therefor appearing, it is hereby ordered that the motion to dismiss is DENIED and the alternative motion to stay is GRANTED. Per the discussion on the record during the hearing on the motion, the Court also directs that Olsen, Standard, and any interested separately named defendants in the parallel state court action participate in mediation through this Court's alternative dispute resolution program.

**IT IS SO ORDERED.**

DATED: April 26, 2010

_____
JEREMY FOGEL
United States District Judge

---

does not apply here because the state court action was not pending *"at the time the federal declaratory action [was] filed."* *Id.* (emphasis added). However, it appears that the purposes of the presumption – judicial economy, comity and federalism – are served still here where the state court has denied Standard's motion to dismiss and the state court action has proceeded beyond its infancy.